Curia, per

JohNson, J.
The case stated in the decree of the Circuit Court, from which this is an appeal, is concisely this. The intestate, Nicholas Priester, having advanced his children *33 in unequal portions, with the intention to equalize them after his death, made promissory notes to four of his children^ differing in amount and in the time of payment, and delivered them to the defendant, James Ulmer, with directions that he should deliver them to the persons to whom they were made payable, after his (the intestate’s) death. Ulmer retained the notes in his possession; and upon a bill for partition of his (the intestate’s) estate, the questions discussed upon the argument here, are 1st. Whether the notes are binding as debts due by the intestate ? And 2d. Whether they are valid as donatio causa mortis ?
There is no rule better established than that' a promise to pay money without consideration is nudum •pactum, and void. There must be the do ut des, the fado ut facias, the fado ut des, or the do ut facias, of the civilians, to make a promise binding; nor is it helped by being in writing, unless by specialty, which itself imports a consideration. In Singleton vs. Bremar, Harp. 211, Judge Nott says, that “as between the original parties, a note without consideration is no more than a parol promise to pay money as a gift, which is not a ground of action; it is a nude pact, and void as between the original parties; ” and he is sustained by the whole current of authorities. These positions are not directly questioned, but, it is said, that a pecuniary consideration is not necessary, and that a moral obligation is sufficient to support a promise: that the intestate was under a moral obligation to provide equally for all his children, and having made these notes with a view to that object, they are obligatory on his representatives. The general rule is, that the consideration to make a contract binding, must be .either a benefit to the party promising, or some trouble of prejudice to the party to whom the promise is made. (Com. Dig. Action on the case upon Assumpsit, B. 1.) And on referring to the cases in which it has been held that a promise founded on a moral consideration has been sustained, it will be found that they have been founded on some right withheld, or wrong done to the party to • whom the promise was made, and for which the rules of law did not provide a remedy; *34 as where one promises to pay a just debt barred by the statute of limitations; or a debt contracted during infancy; or a certificated bankrupt, who afterwards becomes able to pay a pre-existing debt: Ld. Ray. 389 ; Str. 690; 1 T. R. 648 ; or where a woman, after the death of her husband, promises to pay a bond given by her whilst covert, for money lent to a third person at her request. Lee vs. Muggeridge, 1 Eng. C. L. R. 14. But I have not been able to find any case or doctrine which maintains the position that the consideration of love and affection will support a promise. On the contrary, Comyn, in his treatise on contracts, vol. 1, page 16, says, that it is not .sufficient; and he remarks, with great reason, that although a gratuitous undertaking, seriously made, is certainly sufficient to form the basis of a moral or honorary engagement, and ought not to be receded from without adequate reasons, yet, in general, a person making such a promise, does not thereby intend to subject himself to legal responsibility, and the object of the law is rather to give effect to contracts founded on the exigencies of society, than to compel the execution of a voluntary engagement of a mere donation.
Perhaps no case could have occurred which would better illustrate the correctness of the rule than that now under consideration. The moral obligation to provide for the support and subsistence of a wife, is at least equal to that of providing equally- for children. The law, in most cases which occur, makes a difference in her favor, by giving her one-third of the husband’s estate after his death, whatever may be the number of his children; and it so happens, in this case, that if the amount of their notes are substrae ted from this estate, it will leave a mere pittance to be distributed between the widow and the children ; and the effect of the position attempted to be maintained, is to violate one rule of morality to preserve another. If, after the distribution of one-third of the estate to the widow, the estate had been sufficient to make up the shares of those not advanced, equal to those children who had been, the law would have done precisely what the intestate intended, by so *35 distributing the estate, as to make them all equal, and it cannot be regarded as a breach of morality not to pay that which cannot be paid for want of assets, without • violating a rule of ■ morality as'well-' as of law. ■ ' .
’ It is equally clear that these notes are not góod as donatio causa mortis. To substantiate such a gift, it must be made, 1st.. In the last ’illness of the donor, in. apprehension of the approach .of death. ,-2d. It must be a thing capable of delivery and which passes by it. 3d. There .must be Such a delivery as to transfer the possession. And 4th. It reverts to the ‘donor.’ if he survives, (Tol. Law of Ex’ors. 233). And it may be safely affirmed that no one of these circumstances enters. into the gifts now .claimed.
It does not appear that the intestate was sick at .the time, nor ■did any other circumstance enter into the transaction, which shows that it, was made in contemplation of approaching death within the meaning of the rule. The subject of the gift was a void promise to pay after the death of the donor, — a thing having neither form, shape, or legal existence, incapable of actual delivery, or passing by delivery. \ It could not revert to the donor because the gift was, by the terms,- not to take eifect until after his death. • \
It is therefore ordered, adjudged and decreed, that so much of the decree ’ of the Circuit Court as directs that the notes in question be paid out of the funds of the estate of the intestate, be reversed, ánd that the said notes be delivered up to’be. can-celled. In., all other respects the said decree is affirmed.
O’Neall and Harper, JJ., concurred.

Decree modified.